IN UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

L.C.,[1]

      Plaintiff,

v.                                        Civil Action No. _____

UNITED STATES OF AMERICA;
RDAP INSTRUCTOR HOSEA LEE

      Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, L.C., was brutally raped and otherwise sexually assaulted and battered while incarcerated at the federal prison in Lexington, Kentucky, known as the Federal Medical Center, Lexington ("FMC Lexington" or "FMC"). By and through her attorneys, she brings claims based upon the Eighth Amendment to the United States Constitution pursuant to the legal standards set forth in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2D 619 (1971), and based upon the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* and/or other applicable law. For her complaint against Defendants, L.C. states as follows:

### PARTIES

1.     Plaintiff, L.C., was at all relevant times to this complaint in the custody of the Federal Bureau of Prisons ("BOP"), including at FMC Lexington, which is the prison facility located within the Eastern District of Kentucky where the sexual assaults described herein occurred.

---

[1]   These initials, and all initialized references to inmate victims of sexual assault at FMC Lexington, are pseudonyms used to protect the subjects' identities for personal safety reasons. These persons have legitimate fears of retaliation from correctional officials and/or present or former inmates for making public allegations regarding correctional officers.

2.      Defendant, the United States of America, is a sovereign entity named herein pursuant to the Federal Tort Claims Act and oversees the Federal Bureau of Prisons ("BOP"), which is responsible for the custody and care of federal inmates.

3.      Defendant, Hosea Lee ("Lee"), was at all times relevant to this complaint employed by the BOP in the Psychology Services Department as a Residential Drug Abuse Program ("RDAP") instructor at FMC Lexington.

4.      Defendant Lee was at all times relevant to this complaint acting under color of law and within the scope of his employment with the United States BOP.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 & 1346 (b)(1) as the claims in this case are brought against the United States of America under the Federal Tort Claims Act 28 U.S.C. 2671, *et seq.* and against the individual Defendants under the Eighth Amendment to the United States Constitution, pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).*

6.      Plaintiff filed an Administrative Claim (SF-Form 95) on August 31, 2020 with the Federal Bureau of Prison's Mid-Atlantic Regional Office and received a denial letter on February 26, 2021.  Her claim is now considered denied, she has exhausted all obligatory administrative remedies, and this matter is ripened for the filing of this civil action.

7.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1402(b), as some or all of the events upon which this action is based occurred in the Eastern District of Kentucky.

## FACTS

8.      At FMC Lexington the BOP employs correctional officers, facilities staff and management to oversee and operate the prison facility.  The correctional officers are trained,

2

managed, overseen and paid by the BOP through the United States Department of Justice, and serve "investigative or law enforcement" functions.

9. As a federal inmate, L.C. was committed to the Government's care, custody, and control and while in such custody federal law specifically requires the BOP to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States" and to "provide for the protection ... of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2)-(3).

10. As a federal inmate, L.C.'s options for escaping sexual assault or for resisting the sexually abusive conduct of a guard were limited. L.C. — like all inmates at FMC Lexington — relied on employees to protect her from sexual abuse by guards and staff.

11. As a condition of his employment, Defendant Lee was or should have been required to attend and complete the BOP's Correctional Training Program, Phases I (an introductory two-week course) and II (a three-week long course) and received a week of specific training on how to supervise female offenders. Moreover, annually, or otherwise periodically, Lee would have received refresher training and continuing education on the prohibition of sexual abuse of inmates.

12. Many of the BOP's policies are contained in documents titled "program statements" which set forth rules and procedures that all BOP employees are required to follow.

**Program Statement 3420.11 – Standards of Employee Conduct**

13. Program Statement 3420.11 sets out the duties and responsibilities of all BOP employees. It requires that employees, "[A]s soon as practicable (but no later than 24 hours) report to their CEO (or other appropriate authority such as the Office of Internal Affairs or the Office of the Inspector General) any violation, appearance of a violation, or attempted violation

3

of these Standards or of any law, rule, or regulation.  Every employee is required to immediately report to management any act or omission by any person that could result in a breach of institution security.  Failure by employees to follow these regulations and policy or any other Bureau policy or relevant regulation(s) could result in disciplinary action, up to and including removal."

14.    Program Statement 3420.11 (Standards of Employee Conduct) mandates that "[n]o employee shall engage in, or allow another person to engage in, sexual behavior with an inmate.  There is never any such thing as *consensual* sex between staff and inmates."

15.    Program Statement 3420.11 states that BOP employees are subject to administrative action, up to an including removal, for any inappropriate contact, sexual behavior, or relationship with inmates, regardless of whether such contact constitutes a prosecutable crime.  Physical contact is not required to subject an employee to sanctions for misconduct of a sexual nature.

16.    Program Statement 3420.11 goes on to state that "Title 18, U.S. Code Chapter 109A provides penalties of up to life imprisonment for sexual abuse of inmates where force is used or threatened.  Sexual contact is defined as the intentional touching of the genitalia, anus, groin, breast, inner thigh, or buttocks with the intent to abuse, humiliate, harass, degrade, arouse, or gratify the sexual desire of any person.  All allegations of sexual abuse will be thoroughly investigated and, when appropriate, referred to authorities for prosecution."

17.    Each new BOP employee, contractor, and volunteer must receive and sign a form acknowledging receipt of Program Statement 3420.11.

18.    Program Statement 5324.12 (Sexually Abusive Behavior Prevention and Intervention Program) concerning the prevention of, and intervention upon sexually abusive

4

behavior, implements zero tolerance toward all forms of sexual activity, including sexual abuse and sexual harassment, and provides guidelines to address prohibited and/or illegal sexually abusive behavior.

19.    Program Statement 5324.12 is the controlling BOP policy addressing the prevention of, and intervention upon, sexually abusive behavior.  It is disseminated agency-wide and applies to all facilities operated by the BOP and every staff member working within each correctional facility.

20.    Program Statement 5324.12 lays out duties and responsibilities with respect to conduct for all BOP employees, and mandates particular staff and agency reporting duties with respect to sexually abusive behavior, including concerning incidents or possible incidents of sexual abuse or sexual harassment:  it mandates that "[a]ll staff must report information concerning incidents or possible incidents of sexual abuse or sexual harassment to the Operations Lieutenant, or where appropriate, in accordance with the Program Statement 3420.11."

21.    BOP policy requires the training of all employees who may have contact with inmates on how to fulfill their responsibilities under agency sexual abuse and sexual harassment prevention, detection, reporting, and response policies and procedures.

22.    Inmates, employees, and the public may file a complaint at the BOP facility where an incident of sexual abuse occurred; through BOP's Office of Internal Affairs ("OIA"); or with the Department of Justice Office of Inspector General ("OIG").  In accordance with the agency's own Standards of Employee Conduct, BOP employees must report any violation of those Standards, or any rule or law within one business day of the incident to their Chief Executive Officer ("CEO"), OIA, or the OIG. Decisions regarding disciplinary action in cases

5

where the allegations are sustained are managed by BOP's Human Resources Management ("HRM") and BOP's Office of General Counsel.

***The Setting of Defendant Lee's Sexual Assaults***

23.    After successfully completing a part of her required Residential Drug Abuse Program ("RDAP") at another facility, L.C. was transferred to FMC Lexington to complete the program.

24.    L.C. was told she was required to finish the last part of her RDAP by completing her Aftercare (known as "Follow-up" or "Aftercare") at FMC.

25.    Her completion of the Aftercare component was not optional: Aftercare is a component of the RDAP program; successful completion of Aftercare is completion of the entire required RDAP program; and a failure in Aftercare is a failure of the entire RDAP program.

26.    Approximately two weeks after L.C. was transferred to FMC Lexington, upon a fellow inmate's direction, Plaintiff went to Hosea Lee's office to sign up for Aftercare.

27.    L.C. understood that Defendant Lee was to be her instructor, that he was in control of her recovery care, and that he was in control of her successful completion or failure of her required RDAP program.

28.    The BOP grants instructors like Defendant Lee immense authority and broad discretion to determine an inmate's passage or failure in RDAP and its Aftercare component— and hence, to determine whether an inmate receives punishment or rewards such as an early release.

29.    Receiving a passing mark from Defendant Lee in RDAP Aftercare could secure L.C. a large amount of incentives and awards including but not limited to:  early release; money;

6

preferred living quarters; special recognition privileges; personal property allowances; photographs of an RDAP completion ceremony sent to her family members; and a nearer-release transfer.

30. While passing RDAP carries a host of awards, failing RDAP has grave consequences, including but not limited to: ineligibility for a reduced sentence; revocation of any prior incentives given (e.g. money); transfer back to prior institution; extended length of community confinement; ineligibility for a furlough (other than possibly an emergency furlough); ineligibility for performance pay above maintenance pay level, bonus pay, or vacation pay; ineligibility for the Federal Prison Industries work program assignment; and an increased risk of harm and retaliation in her current institution for "causing trouble" and angering an RDAP teacher who is in charge of so many inmates' incentives and fates in the federal prison system.

31. The power which Defendant Lee's job afforded him made inmates such as L.C. very vulnerable to any illicit demands he might choose to make, and Lee fully exploited this power for his sexual gratification.

### *Rape #1*

32. L.C.'s Aftercare class, which was "taught" by Defendant Lee, commenced approximately in August 2019, and from the class' outset Lee gave inordinate and inappropriate attention to Plaintiff.

33. Defendant Lee used a standard RDAP Aftercare textbook to teach the class, but sexualized the questions for L.C. For example, rather than ask the question out of the book about how an inmate might have been "negatively impacted by domestic relationships," Lee

7

asked L.C. to "tell the class what kinds of men you have been attracted to in the past, black guys? White guys?"

34.   Outside of class, Lee also targeted L.C. for sexual harassment.  For example, he approached her as she was making crafts (invitations for her birthday party) and said he was going to need to "go home and take a cold shower."

35.   Following her birthday party, on or about August 20, 2019, L.C. was told by another inmate that Defendant Lee wanted her to go to his office.

36.   L.C. arrived at Defendant Lee's door to find him sitting at his desk just staring at her.

37.   Upon asking him what was going on, Defendant Lee asked her when was the last time she "had some dick."

38.   Startled and not knowing what to do or say, Plaintiff replied that she had been in prison a long time so it had been quite a while.

39.   Defendant Lee then stood up, moved to the doorway, and looked up and down the hall which was clear of any other persons.

40.   Defendant Lee then ordered L.C. into the closet in his office and raped her vaginally without a condom.

41.   After he was finished, Defendant Lee wiped himself off with a paper towel and told her to "come back next week."

42.   Several days later, L.C. discovered a rash on her vagina, which then turned into a several sores.

43.   L.C. did not want to go to medical at this time because she was afraid it would get back to Lee and get her in trouble.

8

44.     L.C. was given a test on February 18, 2020 which confirmed she had contracted herpes – HSV type 1 and 2.

45.     Upon information and belief, L.C. had never tested positive for herpes before she was raped by Lee.

### *Additional Rapes and Sexual Assaults*

46.     L.C. returned to Defendant Lee's office as ordered but tried to stop him by falsely telling him that she had her menstrual period and therefore, could not have sex with him.

47.     Defendant Lee told L.C. he expected her to return to his office for sex after her period ended, but he then forced her into the closet anyway and sexually assaulted her.

48.     After he was finished, Defendant Lee ordered L.C. to return to his office on alternating Tuesdays and Thursdays every two weeks.

49.     Thereafter, Defendant Lee raped L.C. at least three times vaginally and, additionally, forced her to perform oral sex upon him at least two times.

50.     For all of these occurrences, Defendant Lee would order Plaintiff into his office closet, where he either raped her vaginally or forced her to perform oral sex upon him.

51.     In addition, Lee would occasionally pull L.C. around a corner and "make out" with her. He also rubbed himself against her for his sexual gratification as if having sex with her.

52.     L.C. did not consent to any of the sexual contact described above, nor could she—the BOP's own Program Statement on the standards of employee conduct provide that "[n]o employee shall engage in, or allow another person to engage in, sexual behavior with an inmate. There is never any such thing as *consensual* sex between staff and inmates."

9

53.     During the timeframe of the rapes, L.C. did not report Defendant Lee out of fear of retribution which could be exacted in multiple ways.  Among the ways of harming Plaintiff, Defendant Lee could fail her in her RDAP Aftercare class and imperil her early release; he could delay her reunion with her children; and he could order or induce other inmates do harm to her.

**Post-Sexual Assault Events**

54.     Upon information and belief, BOP authorities undertook investigative activities respecting Defendant Lee, and when interviewed, out of fear for retaliation, L.C. at first denied having any sexual involvement with Lee.

55.     Having had extremely inadequate and traumatizing drug rehabilitation and recovery care in her RDAP program and under inordinate stress caused by Defendant Lee's sexual misconduct, L.C. resorted to using suboxone, which was revealed to BOP authorities through failed drug testing.  As a consequence of the failed drug test, L.C. was sent to the Fayette County Detention Center ("FCDC") and received various forms of punishments.

56.     L.C. then reported to a FCDC representative that she had been sexually victimized by Lee while at FMC Lexington, leading to her drug use.

57.     Thereupon, in or around mid-January 2020, in an interview with an OIG investigator, L.C. truthfully reported being sexually victimized by Defendant Lee.

58.     L.C. was returned to FMC Lexington from FCDC.

59.     Upon her return, L.C. received the diagnosis of oral herpes (HSV I) and genital herpes (HSV II).

60.     A Mr. Higgins in the FMC medical department said that "they [meaning all victims of Lee] have all got herpes."

10

61.    Upon information and belief, both types of herpes were transmitted to her by sexual contact with Defendant Lee.

62.    The herpes infection was both physically and emotionally injurious to L.C., and necessitated healthcare for the lifelong treatment of herpes, which currently has no cure.

63.    Upon information and belief, prior to and during Defendant Lee's sexual assaults upon Plaintiff, BOP personnel, not only at FMC Lexington but at other prison facilities, knew or should have known of Defendant Lee's propensity for sexual misconduct involving inmates.

64.    The site, circumstances and frequency of Defendant Lee's sexual assaults, and the fact that they involved multiple inmates, make it impossible for Lee's conduct to have been completely hidden from all other BOP personnel.

65.    In fact, L.C. was told by her counselor Ms. Cheney that Defendant Lee had been reported to SIS "a long time ago."

66.    In another counseling session, a Dr. Shuster said she was worried about L.C.'s recovery because of "what happened with a clinician." However, L.C. had not told Dr. Shuster that she had been sexually assaulted by one of her recovery clinicians.

67.    L.C. also asked Dr. Shuster if any information in her PSI would be shared with Lee, and Dr. Shuster responded that "some good clinicians feel it's best to read up on our background."

68.    Dr. Shuster also told L.C. something to the effect that "we all are responsible for our choices," which Plaintiff reasonably interpreted to mean that Plaintiff was to blame for the sexual interactions with Defendant Lee.

69.     Now at Federal Prison Camp, Alderson ("Alderson"), L.C. continues to suffer retaliation; she has been isolated from the general population and ostracized by the guards because she is a PREA-inmate.

70.     On the day of her transport to Alderson, officers Crimaldi and Dallman woke her up at 6:45, rushed her out the door, did not allow her to have breakfast and brought no lunches.

71.     At approximately 10:30 or 11:00 when they stopped for gas, L.C. begged Crimaldi to please get them food.

72.     Dallman said it was up to Crimaldi because she was lieutenant.

73.     Crimaldi said, "I'm not spending my money on y'all [sic]."

74.     L.C. said to please use the BOP card and Crimaldi said, "Ha! No."

75.     L.C. felt that Dallman felt bad for them and purchased them some food himself.

76.     Upon intake at Alderson, guards hassled L.C. and another inmate, threatening to take their legal paperwork from them.

77.     The captain gave her a "speech" and told her that they better not have the same "issues" with her that they had at FMC. L.C. understood the captain was referring to her PREA report.

78.     At Alderson, L.C. has suffered bullying from other inmates because she made a PREA report about Lee: She has been called a snitch, accused of lying to get her sentence cut, stared at, asked to see her paperwork, and made to feel unsafe.

## COUNT I – CLAIMS AGAINST HOSEA LEE PURSUANT TO THE EIGHTH AMENDMENT TO THE UNITED STATES CONSITUTION

79.     L.C. re-alleges and incorporates by reference all of the preceding allegations as if set forth herein.

80. As an inmate in the custody of the United States BOP, L.C. had a clearly established right under the Eighth Amendment to the United States Constitution not to be subjected to cruel and unusual punishment while incarcerated.

81. Defendant Lee's actions constitute cruel and unusual punishment in the forms of sexual abuse, assault, battery and rape.

82. L.C. was not sentenced with a prescription for rape or to any form of sexual abuse; they are not legitimate forms of punishment. They are not ancillary components of any prison sentence, and they serve no legitimate penal purpose.

83. All of Defendant Lee's acts and omissions were taken while acting under color of law and in the scope and course of his position as an RDAP instructor at FMC Lexington.

84. Defendant Lee, individually, failed in his duty to provide L.C. with constitutionally safe and secure conditions or confinement.

85. Defendant Lee acted intentionally, maliciously, oppressively and/or with gross negligence against Plaintiff's constitutional rights.

86. As a direct and proximate result of Defendant Lee's misconduct, L.C. was subjected to physical and emotional injury, depression, post-traumatic stress, embarrassment, and other damages, all or some of which shall continue indefinitely or permanently, as well as retaliation.

87. Defendant Lee's conduct was of such a quality and nature as to warrant his liability for punitive damages, in accordance with applicable law.

88. L.C. is also entitled to recover from Defendant Lee all compensatory damages recognized by applicable law.

### COUNT II – CLAIMS AGAINST THE UNITED STATES OF AMERICA UNDER THE FTCA: ASSAULT AND BATTERY

89.     L.C. re-alleges and incorporates by reference all of the preceding allegations as if set forth herein.

90.     The actions of Defendant Lee constitute assault and battery in violation of state law.

91.     Hosea Lee assaulted and battered L.C. through, but not limited to, unwanted, non-consensual sexual abuse, sexual assault, rape, and harassment.

92.     All of Hosea Lee's acts and omissions were taken while acting under color of law and in the scope and course of his employment as an RDAP Instructor at FMC Lexington.

93.     As a result of Hosea Lee's sexual assault and battery, L.C. suffered physical and emotional injury, depression, post-traumatic stress, embarrassment, and other damages, all or some of which shall continue indefinitely or permanently.

94.     Under the Federal Tort Claims Act, the Defendant, United States of America, is liable to L.C. for the unlawful actions of Hosea Lee as he was acting within the scope of his employment with the United States BOP.

## COUNT III – CLAIMS AGAINST THE UNITED STATES OF AMERICA UNDER THE FTCA: NEGLIGENCE

95.     L.C. re-alleges and incorporates by reference all of the preceding allegations as if set forth herein.

96.     Defendant the United States of America is responsible for the oversight of its employees, which includes officers and staff at federal correctional institutions, including FMC Lexington.

97.     Pursuant to the Federal Tort Claims Act, the United States is liable for damages caused by the negligent or wrongful acts of its employees acting within the scope of their

14

employment, under circumstances where the United States, if a private person, would be liable in accordance with the laws of the State of Kentucky.

98.    Federal law specifically requires the BOP to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States" and to "provide for the protection . . . of all persons charged with or convicted of offenses against the United States."  18 U.S.C. § 4042(a)(2)-(3).

99.    Defendant United States and the supervisors and employees of FMC Lexington have a duty to provide inmates, being in their custody, with a safe and secure environment, free of dangers, including the dangers of sexual harassment and sexual assault.

100.    As a premises owner/operator, the United States has a duty to provide inmates with a reasonably safe place, which specifically includes a place reasonably free and safe from known or suspected sexual abusers and rapists and/or individuals who pose a foreseeable risk of sexual abuse or rape.

101.    Correctional officers and other prison officials and representatives at FMC Lexington have a non-discretionary duty, pursuant to PREA, to enforce a policy of "zero-tolerance" with respect to sexual abuse of inmates by staff.

102.    Correctional officers and other prison officials and representatives at FMC Lexington have a duty to protect inmates from harm caused by correctional officers, and other prison officials and representatives, specifically including Defendant Lee.

103.    Correctional officers and other prison officials and representatives at FMC Lexington have a duty to disallow or sufficiently monitor and supervise one-on-one interactions between inmates and prison representatives such as Defendant Lee.

15

104.    Correctional officers and other prison officials and representatives at FMC Lexington have a duty to house inmates in a safe and secure manner.

105.    Pursuant to 28 C.F.R. § 115.31, BOP and FMC Lexington have a non-discretionary duty to train employees on how to prevent sexual abuse and sexual harassment, the right of inmates to be free from sexual abuse and harassment, the dynamics of sexual abuse and harassment, the common reactions of sexual abuse and harassment victims, and how to detect and respond to signs of threatened and actual sexual abuse and to ensure that such training was properly followed.    BOP and FMC Lexington breached this duty and such breach was a proximate cause of the injuries and damages alleged herein.

106.    Pursuant to 28 C.F.R. §§ 115.31 and 115.33, BOP and FMC Lexington have a non-discretionary duty to train employees and advise inmates of their right to be free from retaliation for reporting incidents of sexual harassment and sexual abuse by BOP employees and representatives and to ensure that such training was properly followed.    Plaintiff was retaliated against, and therefore BOP and FMC Lexington breached this duty and such breach was a proximate cause of the injuries and damages alleged herein.

107.    Pursuant to 28 C.F.R. §115.17, BOP and FMC Lexington officials have non-discretionary duties with respect to the hiring, promotion, and periodic review of their employees.    Those non-discretionary duties include duties to consider any incidents of sexual harassment, whether the employee has engaged in sexual abuse, and whether the employee has been convicted or civilly adjudicated of sexual abuse.    Upon information and belief, BOP and FMC Lexington failed to perform their non-discretionary duties with respect to Defendant Lee or failed to appropriately responsively act if they did perform such duties.

16

108. BOP supervisory officials have a duty to monitor, supervise, train, and discipline employees/representatives at FMC Lexington, specifically including Defendant Lee, in order to ensure that staff/representatives properly perform their PREA-mandated duties so that inmates' Eighth Amendment rights are not violated.

109. Prison officials at FMC Lexington knew or should have known that Defendant Lee should not have been permitted to have unsupervised access to inmates, including L.C., to whom he posed an excessive and unreasonable risk.

110. Through the conduct of Defendant Lee and other BOP employees/representatives, all of the duties encompassed by this count were breached, and as a proximate result Plaintiff sustained injuries and damages.

111. As a direct and proximate result of these breaches of duties, L.C. suffered personal injuries associated with and arising from multiple sexual assaults and rape including, but not limited to, severe physical and emotional injury, herpes infections and health care to treat lifelong infections, depression, post-traumatic stress, embarrassment, and other damages, all or some of which shall continue indefinitely or permanently, as well as retaliation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Honorable Court grant her the following relief:

1. Compensatory damages as to all Counts;

2. Punitive damages as to Count I against Defendant Lee, and not as to any Count against the United States of America;

3. Reasonable attorneys' fees and costs in accordance with applicable law; and,

4. Such other further relief as this Court in its discretion deems just.

## JURY DEMAND

Plaintiff hereby demands a jury trial on any and all Counts so triable under applicable law.

**L.C.,**
Plaintiff

*/s/David G. Bryant*
David G. Bryant
David Bryant Law, PLLC
600 W. Main St., Ste. 100
Louisville, KY 40202
Telephone:  (502) 540-1221
david@davidbryantlaw.com

*/s/L. Dante diTrapano*
L. Danté diTrapano, Esq. (WVSB# 6778)
Benjamin Adams, Esq. (WSB# 11454)
Alex McLaughlin, Esq. (WVSB# 9696)
CALWELL LUCE DITRAPANO, PLLC
500 Randolph Street
Charleston, WV 25302
Telephone: 304-343-4323
Fax: 304-344-3684
dditrapano@cldlaw.com
badams@cldlaw.com
amclaughlin@cldlaw.com

*/s/Jay T. McCamic*
Jay T. McCamic, Esq. (WVSB# 2386)
MCCAMIC LAW FIRM, PLLC
80 12th Street, Ste. 305
P.O. Box 151
Wheeling, WV 26003
Telephone: 304-238-9460
Fax: 304-830-5324
jay@mccamic.com

*/s/Anthony I. Werner*

Anthony I. Werner, Esq. (WVSB# 5203)
JOHN & WERNER LAW OFFICES, PLLC
Board of Trade Building, STE 200
80 - 12th Street
Wheeling, WV 26003
Telephone: 304-233-4380
Fax: 304-233-4387
awerner@johnwernerlaw.com