UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| L.C., | ) | |
| | ) | |
| Plaintiff, | ) | Case. No. 5:21-cv-00124-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| UNITED STATES OF AMERICA, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Defendant United States' motion to dismiss Plaintiff L.C.'s assault and battery claims and negligent confinement claim. [R. 26.] For the reasons set forth herein, the United States' motion to dismiss will be GRANTED.

**I**

In portions of 2019 and 2020, Plaintiff L.C. was an inmate at the Federal Medical Center, Lexington. [R. 1 at 6.] While at another facility, L.C. completed the majority of her required Residential Drug Abuse Program (RDAP). *Id.* L.C. was informed that to complete the RDAP program, she would be required to complete the "Aftercare" portion of the program at FMC Lexington. *Id.* L.C.'s Aftercare class, which began in August 2019, was taught by Defendant Hosea Lee. *Id.* Mr. Lee was a BOP employee who worked in the Psychology Services Department as an RDAP instructor at FMC Lexington. *Id.* at 2.

During the Aftercare class, L.C. alleges that Mr. Lee began giving her "inordinate and inappropriate attention," including making sexual remarks and comments. *Id.* at 7. Between August and October 2019, Mr. Lee sexually assaulted L.C. in his office closet, allegedly raping

her on at least three occasions and forcing her to perform oral sex upon him at least twice.  *Id.* at 8–9.  L.C. alleges that she did not report Mr. Lee's actions because she feared retribution.  *Id.* at 10.

On Friday, November 22, 2019, an inmate at FMC Lexington reported to a BOP employee that Mr. Lee had made inappropriate sexual comments to her following her graduation from the RDAP program.  [R. 28-3 at 2, 4.]  That same day, another inmate also informed a BOP employee that Mr. Lee had been "bringing packages of cigarettes to inmates for sexual favors."  *Id.* at 11.  The BOP began an investigation, and on November 25, Mr. Lee was banned from FMC Lexington and informed that "an allegation of misconduct ha[d] been made against [him]."  *Id.* at 9.

As part of the investigation, L.C. was interviewed and stated under oath that she had only met with Mr. Lee on one brief occasion, that she had "never been sexually involved with Lee in any way," and that she did not think Mr. Lee was the "type of person who would do something inappropriate with an inmate."  [*Id.* at 13; *see also* R. 1 at 10.]  On January 15, 2020, Mr. Lee resigned from his position, and two days later, L.C. admitted that Mr. Lee had sexually abused her.  [R. 1 at 10; R. 28-2 at 7.]  In February 2020, L.C. was transferred to a different facility for a couple of months before returning to FMC Lexington.  [R. 1 at 10; R. 28-2 at 7.]

On May 8, 2021, L.C. filed this suit in federal court and brought (1) an Eighth Amendment claim against Mr. Lee; (2) assault and battery claims against the United States under the Federal Tort Claims Act; and (3) a negligence claim against the United States under the Federal Tort Claims Act.  [R. 1 at 12–17.]  The United States filed a motion to dismiss on September 10, 2021, specifically asking the Court to dismiss L.C.'s assault and battery claims

and the negligent confinement portion of the negligence claim. [R. 26.] L.C. responded on October 1, and the United States replied on October 15.[1] [R. 29; R. 30.]

## II

### A

The United States is seeking to dismiss L.C.'s assault and battery claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and L.C.'s negligent confinement claim under both Rule 12(b)(1) and 12(b)(6). [R. 26 at 4.] Rule 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction" and challenges "the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)).

A facial attack "goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Id.* "A 'factual attack,' by contrast, is advanced when the movant contests the alleged jurisdictional facts by introducing evidence outside the pleadings." *Gaetano v. United States*, 994 F.3d 501, 505 (6th Cir. 2021). With a factual attack, "no presumptive truthfulness applies to the allegations. When a factual attack…raises a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citations omitted). "In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing

---

[1] On January 14, 2022, L.C. filed a Motion to Stay this action pending completion of Mr. Lee's criminal trial. [R. 31.] However, on April 11, Mr. Lee filed a motion for rearraignment, which was granted. *See United States v. Lee*, United States District Court, Eastern District of Kentucky, Criminal Action. No. 5:21-cr-00084-DCR-MAS-1 (E.D. Ky. July 23, 2021) (R. 37; R. 38). Accordingly, the motion will be denied as moot.

to resolve jurisdictional facts." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "An assertion of sovereign immunity constitutes a factual attack on the Court's subject matter jurisdiction." *B.A. v. United States*, 2021 WL 4768248, at *1 (E.D. Ky. Oct. 12, 2021) (citing *CHS/Community Health Sys. v. Med. Univ. Hosp. Auth.*, 2021 WL 96404, at *2–3 (M.D. Tenn. Mar. 15, 2021)); *see also Durham v. Martin*, 388 F. Supp. 3d 919, 929 (M.D. Tenn. 2019) ("A State's assertion of sovereign immunity constitutes a factual attack.") (citing *Hornberger v. Tenn.*, 782 F. Supp. 2d 561, 564 (M.D. Tenn. 2011)).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). The Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

Moreover, the facts that are pleaded must rise to the level of plausibility, not just possibility; "facts that are merely consistent with a defendant's liability ... stop[ ] short of the line between possibility and plausibility." *Iqbal*, 556 U.S. 662 at 678 (quoting *Twombly*, 550 U.S. 544 at 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing Twombly, 550 U.S. at 556).

**B**

The United States must waive sovereign immunity before it can be sued. *Milligan v. United States*, 670 F.3d 686, 692 (6th Cir. 2012). The Federal Tort Claims Act, "was designed primarily to remove the sovereign immunity of the United States from suits in tort." *Levin v. United States*, 568 U.S. 503, 506 (2013) (citing *Richards v. United States*, 369 U.S. 1, 6 (1962)). "The Act gives federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of federal employees acting *within the scope of their employment*." *Id.* (quoting 28 U.S.C. § 1346(b)(1)) (emphasis added). "The extent of governmental tort liability is 'determined in accordance with the law of the state where the event giving rise to liability occurred.'" *Milligan*, 670 F.3d at 692 (quoting *Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995)).

> Under Kentucky law, "the focus is consistently on the purpose or motive of the employee in determining whether he or she was acting within the scope of employment." *O'Bryan v. Holy See*, 556 F.3d 361, 383 (6th Cir. 2009) (quoting *Papa Jon's Int'l v. McCoy*, 244 S.W.3d 44, 56 (Ky. 2008)). An intentional tort committed by the employee may be within the scope of his or her employment if "its purpose, however misguided, is wholly or in part to further the master's business." *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005). "[T]o be within the scope of employment, the conduct must be of the same general nature as that authorized or incidental to the conduct authorized." *Osborne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000).

*B.A.*, 2021 WL 4768248, at *2.

1

The United States argues that L.C.'s "claims for assault and battery (and retaliation)[2] are not covered by the FTCA because they were not committed by an employee acting within the scope of his employment." [R. 26 at 6 (citing 28 U.S.C. § 1346(b)(1); 28 U.S.C. § 2679(b)(1)).] If this is true, then the United States is covered by sovereign immunity. L.C. responded that Mr. Lee's actions were within the scope of his employment under Kentucky law.[3]

The recent decision in *B.A. v. United States* is persuasive. B.A. filed suit against the United States and BOP Officer Brian Goodwin for claims that arose from an alleged sexual assault that occurred while she was housed at FMC Lexington. *B.A.*, 2021 WL 4768248, at *1. The United States filed a motion to dismiss, arguing that it was "protected by sovereign immunity because the alleged sexual assault did not occur within the scope of Defendant Goodwin's employment." *Id.* The court agreed, granting the motion to dismiss "because the alleged sexual assault was not within the scope of Goodwin's employment." *Id.*

The court in *B.A.* determined that Kentucky state courts, and the Sixth Circuit applying Kentucky law, "have concluded that a sexual assault is not within the scope of employment because there is no conceivable way that intentionally committing sexual assault can be motivated by a desire to serve the employer." *Id.* at *3 (citing *Flechsig v. United States*, 991 F.2d 300, 302–03 (6th Cir. 1993); *Osborne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000)). Although

---

[2] The United States argues that, to the extent L.C. has made a retaliation claim, retaliation claims are not viable under the FTCA. [R. 26 at 9.] This is true. *See, e.g.*, *Dorsey v. Peter*, 2020 WL 881134, 2020, at *11 (M.D. Penn. Feb. 21, 2020); *Moore-Bey v. Cartrette*, 2015 WL 5608194, at *6 (W.D. La. July 16, 2015). However, L.C. clarified that she has not made a claim for retaliation. [R. 29 at 20.] Accordingly, the Court need not further address the retaliation issue.

[3] In arguing that Mr. Lee was acting within the scope of his employment, L.C. relies on the four-part test articulated in *Coleman v. United States*, 91 F.3d 820, 824 (6th Cir. 1996). However, as another court within the Eastern District of Kentucky recently noted, "the Supreme Court of Kentucky has moved away from 'the principle of the foreseeability of misconduct' and focuses only on the employee's purpose or motive." *B.A.*, 2021 WL 4768248, at *2 n.1 (quoting *Patterson v. Blair*, 172 S.W.3d 361, 370 (Ky. 2005)).

B.A. argued that the sexual assault "was utilized to further the BOP's interest because it was a 'tool of control,'" the court denied that argument, finding sexual assault to be "far outside the scope of Goodwin's duties and [] not reasonably incident to [] the work he was hired to perform." *Id.* The Court particularly found this to be true given that the conduct violated BOP policy and Officer Goodwin faced criminal charges for his conduct. *Id.*

The same is true in this case. Mr. Lee's alleged conduct violated BOP policy,[4] and Mr. Lee also now faces criminal charges for his conduct. *See United States v. Lee*, United States District Court, Eastern District of Kentucky, Criminal Action. No. 5:21-cr-00084-DCR-MAS-1 (E.D. Ky. July 23, 2021). Although L.C. argues that Mr. Lee had control over her because of his position as an RDAP instructor, the facts in this case make it clear that Mr. Lee's actions were motived "solely by a desire to serve [his] own sexual proclivities," and not for any motive or purpose to serve the BOP. *Am. Gen. Life & Acc. Ins. Co. v. Hall*, 74 S.W.3d 688, 692 (Ky. 2002).

To the extent L.C. argues that the United States "conceded that rape is squarely within the scope of employment" in *Millbrook v. United States*, 569 U.S. 569 U.S. 50 (2013), the court in *B.A.* rejected that exact argument for three reasons, all of which are also true in this case: (1) the scope of *Millbrook* was limited "to torts committed while an officer was either executing a search, seizing evidence, or conducting an arrest;" (2) the Court applied Pennsylvania law instead of Kentucky law; and (3) the United States conceded in *Millbrook* that "the correctional officer was acting within the scope of his employment when the alleged sexual assault of the

---

[4] "No employee shall engage in, or allow another person to engage in, sexual behavior with an inmate. There is never any such thing as consensual sex between staff and inmates." United States Department of Justice, Bureau of Prisons Program Statement 3420.11, https://www.bop.gov/policy/progstat/3420_011.pdf (last visited April 15, 2022).

plaintiff may have occurred," whereas here the United States is arguing that under Kentucky law "sexual assault cannot occur within the scope of employment." *B.A.*, 2021 WL 4768248, at *4.

Finally, L.C. argues that it would be premature to dismiss the assault and battery claims before discovery because determining whether an action is within the scope of employment is a fact-based inquiry. [R. 29 at 9.] The court in *B.A.* also considered and rejected this argument because "[w]hether an employee was acting within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred." 2021 WL 4768248, at *4 (quoting *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996)). Accordingly, dismissal at this stage is not premature, and the United States' motion as to the assault and battery claims will be granted.

### 2

Count III of L.C.'s complaint includes claims of negligent hiring and training of Mr. Lee and negligent confinement. [R. 1 at 14–17.] The United States specifically argues that the negligent confinement portion of Count III "should be dismissed under the discretionary function exception (DFE) to the FTCA and under Rule 12(b)(6)." [R. 26 at 10.]

### a

"FTCA actions are not available for claims 'based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" *Jude v. Comm'r of Soc. Sec.*, 908 F.3d 152, 158 (6th Cir. 2018) (quoting 28 U.S.C. § 2680(a)). Courts apply a two-prong test "[t]o determine whether allegedly tortious conduct falls within the discretionary function exception." *Milligan*, 670 F.3d at 693; *see also United States v. Gaubert*, 499 U.S. 315, 322–25 (1991).

First, the agency's action must include "an element of judgment or choice," and cannot be dictated by authority that gives "the employee [ ] no rightful option but to adhere to the directive." *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). Second, the governmental decision must be "the kind that the discretionary function exception was designed to shield." *Id.*

*Jude*, 908 F.3d at 159. The focus of the first inquiry "is on whether the actor had any 'element of judgment or choice' in taking his course of action." *Milligan*, 670 F.3d at 693 (quoting *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997)). The second prong seeks to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Gaubert*, 499 U.S. at 323.

Here, L.C. argues that the United States cannot "ignore federally mandated statutory obligations," and she points to BOP regulations, the Prison Rape Elimination Act (PREA) and subsequent regulations, as well as 18 U.S.C. § 4042(a) to argue that the discretionary function exception does not apply. [R. 29 at 10–11.] However, a review of the statutes and regulations at issue demonstrates that the discretionary function exception does apply in this case.

L.C. points to 34 U.S.C. § 30302, also known as the PREA, as providing "federally-mandated Standards" that are "statutorily required." [R. 29 at 11.] The statute provides the following:

The purposes of this chapter are to-
(1) establish a zero-tolerance standard for the incidence of prison rape in prisons in the United States;
(2) make the prevention of prison rape a top priority in each prison system;
(3) develop and implement national standards for the detection, prevention, reduction, and punishment of prison rape;
(4) increase the available data and information on the incidence of prison rape, consequently improving the management and administration of correctional facilities;
(5) standardize the definitions used for collecting data on the incidence of prison rape;

9

(6) increase the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape;
(7) protect the Eighth Amendment rights of Federal, State, and local prisoners;
(8) increase the efficiency and effectiveness of Federal expenditures through grant programs such as those dealing with health care; mental health care; disease prevention; crime prevention, investigation, and prosecution; prison construction, maintenance, and operation; race relations; poverty; unemployment; and homelessness; and
(9) reduce the costs that prison rape imposes on interstate commerce.

34 U.S.C. § 30302. However, as the United States argues, § 30302 merely outlines the goals of the PREA rather than prescribing a specific course of action. The statute calls for, *inter alia*, the establishment of a zero-tolerance standard for prison rape and calls for making prison rape a "top priority in each prison system" and the development and implementation of national standards to prevent and punish prison rape. *Id.* It cannot reasonably be argued that there exists no "element of judgment or choice" in taking actions based on the general goals found in the PREA. *Milligan*, 670 F.3d at 693; *cf. Dudley v. United States*, 2020 WL 532238, at *12 (N.D. Tex. Feb. 3, 2020) (finding claims of negligent retention and negligent supervision "barred by the discretionary function exception to the FTCA's waiver of immunity"). L.C.'s reliance on 34 U.S.C. § 30307 is likewise unavailing because this statute merely requires the establishment of "national standards for the detection, prevention, reduction, and punishment of prison rape" and states that such standards "shall apply to the Federal Bureau of Prisons." 34 U.S.C. § 30307(a)–(b); *see also Gladney v. United States*, 858 F. App'x 221, 223 (9th Cir. 2021).

Next, L.C. points to regulations enacted to implement the PREA, specifically 28 C.F.R. § 115.11 and 28 C.F.R. 115.13. [R. 29 at 13, 16.] These regulations provide the following:

§ 115.11 Zero tolerance of sexual abuse and sexual harassment; PREA coordinator.

(a) An agency shall have a written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment and outlining the agency's approach to preventing, detecting, and responding to such conduct.

10

(b) An agency shall employ or designate an upper-level, agency-wide PREA coordinator with sufficient time and authority to develop, implement, and oversee agency efforts to comply with the PREA standards in all of its facilities.
(c) Where an agency operates more than one facility, each facility shall designate a PREA compliance manager with sufficient time and authority to coordinate the facility's efforts to comply with the PREA standards.

§ 115.13 Supervision and monitoring.

(a) The agency shall ensure that each facility it operates shall develop, document, and make its best efforts to comply on a regular basis with a staffing plan that provides for adequate levels of staffing, and, where applicable, video monitoring, to protect inmates against sexual abuse. In calculating adequate staffing levels and determining the need for video monitoring, facilities shall take into consideration:
  (1) Generally accepted detention and correctional practices;
  (2) Any judicial findings of inadequacy;
  (3) Any findings of inadequacy from Federal investigative agencies;
  (4) Any findings of inadequacy from internal or external oversight bodies;
  (5) All components of the facility's physical plant (including "blind-spots" or areas where staff or inmates may be isolated);
  (6) The composition of the inmate population;
  (7) The number and placement of supervisory staff;
  (8) Institution programs occurring on a particular shift;
  (9) Any applicable State or local laws, regulations, or standards;
  (10) The prevalence of substantiated and unsubstantiated incidents of sexual abuse; and
  (11) Any other relevant factors.
(b) In circumstances where the staffing plan is not complied with, the facility shall document and justify all deviations from the plan.
(c) Whenever necessary, but no less frequently than once each year, for each facility the agency operates, in consultation with the PREA coordinator required by § 115.11, the agency shall assess, determine, and document whether adjustments are needed to:
  (1) The staffing plan established pursuant to paragraph (a) of this section;
  (2) The facility's deployment of video monitoring systems and other monitoring technologies; and
  (3) The resources the facility has available to commit to ensure adherence to the staffing plan.
(d) Each agency operating a facility shall implement a policy and practice of having intermediate-level or higher-level supervisors conduct and document unannounced rounds to identify and deter staff sexual abuse and sexual harassment. Such policy and practice shall be implemented for night shifts as well as day shifts. Each agency shall have a policy to prohibit staff from alerting other staff members that these supervisory rounds are occurring, unless such announcement is related to the legitimate operational functions of the facility.

28 C.F.R. § 115.11 & 115.13.  Although both sections impose a mandatory duty through use of the word "shall," the duties imposed are general in nature.  *Cf. Montez ex rel. Estate of Hearlson v. United States*, 359 F.3d 392, 396 (6th Cir. 2004).  Section 115.11 directs agencies to have a written policy that outlines the agency's "approach to preventing, detecting, and responding to [sexual abuse and sexual harassment]."  Section 115.13, which requires an agency to "make its best efforts" to protect inmates from sexual abuse clearly gives implementation discretion to the BOP.  Apart from mandating a written policy and certain staffing requirements, these sections provide the BOP officials with no guidance on how to implement the regulations, and therefore the BOP officials have discretion in implementation.  *Gladney*, 858 F. App'x at 223; *but see James v. LaCroix*, 2017 WL 2602598, at *4 (W.D. La. Apr. 17, 2017) (finding discretionary function exception to liability under the FTCA not applicable in context of failure to properly report complaint of sexual harassment).

Furthermore, to the extent Section 115.11 mandates that BOP facilities have a written policy and PREA coordinator in place, L.C. does not argue that FMC Lexington failed to have a written policy or PREA coordinator for the facility.  L.C. only contests the more general requirement that the BOP adopt a "zero-tolerance policy toward sexual assault" over which the BOP has discretion in implementation.  [R. 29 at 11.]

As for 18 U.S.C. § 4042(a), the Sixth Circuit has held that "the duty imposed…is of a general nature, broadly requiring the BOP 'provide for the safekeeping' and 'provide for the protection' of federal inmates."  *Montez*, 359 F.3d at 396.  Accordingly, § 4042(a) "does not specifically prescribe a course of action for prison officials to follow" and therefore involves an element of judgment or choice.  *Id.*

12

Because the Court has determined that "the relevant statute and regulations allowed BOP officials to exercise judgment when making decisions regarding [L.C.'s] safety," the Court must next determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 397.

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

*Gaubert*, 499 U.S. at 322–23.

Here, L.C. primarily argues that it is FMC Lexington's responsibility under the PREA statute and accompanying regulations to ensure that she was "monitored sufficiently to protect [her] from sexual violence" and that the BOP was required "to adopt strict policies." [R. 29 at 11–12.] L.C. argues that because the PREA statute and accompanying regulations represent a "binding mandate," they are "not susceptible to judgment, policy determinations, or cost-benefit analyses." *Id.* at 11. However, as discussed *supra*, the PREA and pertinent regulations provide discretion to the BOP regarding actions the BOP should take to address sexual misconduct. Courts around the country have found that the BOP's decisions in the PREA context are grounded in policy considerations and therefore barred by the discretionary function exception. *See, e.g.*, *Dudley*, 2020 WL 532338, at *12 (finding plaintiff's PREA claims barred by the discretionary function exception); *Tilga v. United States*, 2014 WL 12783121, at *16 (D.N.M. Dec. 5, 2014) (finding "[t]he BOP's decisions and related PREA plan are grounded in policy

13

considerations"); *Doe v. United States*, 2011 WL 1637147, at *7 (D. Haw. Apr. 29, 2011)

(finding PREA, and § 115.13 specifically fall within the discretionary function exception).

As for L.C.'s claim under 18 U.S.C. § 4042(a), it must be dismissed under the

discretionary function exception unless the complaint "alleges the existence of a specific and

immediate threat against [L.C.]." *Montez*, 359 F.3d at 398. This L.C. cannot do. L.C. makes the

following allegations in her complaint regarding Mr. Lee's behavior:

- BOP personnel at FMC Lexington and other prison facilities knew or should have known of Mr. Lee's "propensity for sexual misconduct involving inmates;"
- It would have been "impossible for [Mr.] Lee's conduct to have been completely hidden from all other BOP personnel" given the frequency of the sexual assaults and fact that they involved multiple FMC Lexington inmates;
- An FMC Medical department employee stated that all of Mr. Lee's victims "got herpes;"
- Months after the sexual assaults, L.C.'s counselor told her that Mr. Lee had been reported to SIS "a long time ago."

[R. 1 at 10–11.] These allegations do not rise to the level of a "specific and immediate threat."

*Montez*, 359 F.3d at 398. The assertion that BOP personnel should have known about Mr. Lee's

"propensity for sexual misconduct involving inmates" is nothing more than speculation.

Furthermore, the fact that Mr. Lee assaulted L.C. on multiple occasions over a two-month

period, and even allegations that he may have assaulted other inmates, does not on its own mean

that it was "impossible" that Mr. Lee's conduct was hidden from other BOP personnel. This is

particularly true given L.C.'s own statements detailing the lengths Mr. Lee took to hide his

conduct. L.C. stated that Mr. Lee had L.C. come to his office at irregular intervals, had her enter

his closet before engaging in the alleged sexual abuse, and he was careful to look around and

listen for others before engaging in sexual conduct. [*See* R. 28-1.] L.C. also stated that only one

other individual, another inmate, may have witnessed Mr. Lee's misconduct. *Id.* at 23.

As for the statements that all of Mr. Lee's victims "got herpes" and that Mr. Lee had been

reported to SIS "a long time ago," the record makes it clear that these statements were made after

Mr. Lee's sexual assaults, with the second statement being made several months after the assaults. The timing of the statements does not support a finding of "the existence of a specific and immediate threat against [L.C.]." *Montez*, 359 F.3d at 398. These facts support the BOP's claim that "FMC Lexington officials were unaware of sexual misconduct by [Mr. Lee]" until it was reported by another inmate in late November 2019. [R. 28-2 at 8.] Furthermore, the day the BOP learned of Mr. Lee's misconduct, it opened an investigation. [R. 28-3 at 2, 8.] On Monday, November 25, three days after the investigation began, Mr. Lee was informed that he was barred from entering FMC Lexington. [R. 28-3 at 9.] Mr. Lee resigned from his position less than two months later, and criminal charges were brought against him. [R. 28-2 at 7.] These facts, taken together, ultimately demonstrate that the Court lacks subject matter jurisdiction under Rule 12(b)(1) as to L.C.'s negligent confinement claim and will grant the United States' motion.

**b**

In the alternative, L.C.'s negligent confinement claim can be dismissed under Rule 12(b)(6). The United States argues that L.C.'s negligent confinement claim should be dismissed under Rule 12(b)(6) because "the BOP was not aware that Lee was targeting any inmate, let alone [L.C.], at the time he allegedly sexually assaulted [L.C.]." [R. 26 at 15.] L.C. argues that the BOP failed to "comply with its obligation to maintain a facility with zero tolerance for sexual assault" and the BOP's failure "in that duty…resulted in [L.C.'s] injuries." [R. 29 at 20.]

In Kentucky, a negligence case "requires proof that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) consequent injury." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003) (citing *Mullins v. Commonwealth Life Ins. Co., Ky.*, 839 S.W.2d 245, 247 (Ky. 1992)). The BOP has a

duty to act reasonably to provide inmates with a safe environment.  *Flechsig v. United States*, 786 F. Supp. 646, 650 (E.D. Ky. 1991); *see also Cartwright v. Daviess Cnty.*, 2007 WL 1864246, at *8–9 (W.D. Ky. June 27, 2007) ("In Kentucky, prison officials cannot be held liable for inmate injuries unless, in the exercise of ordinary care, the injury could reasonably have been anticipated") (citing *Taylor v. Curtis*, 58 F. App'x 66, 68 (6th Cir. 2003)).

Here, viewed in the light most favorable to L.C., the evidence (as discussed in section II.B.2.a *supra*) fails to show that the BOP failed to act reasonably.[5]  The evidence does not demonstrate that the BOP was aware, or should have been aware, that Mr. Lee was sexually assaulting L.C.  The primary evidence L.C. offers that the BOP knew or should have known about Mr. Lee's conduct is a statement made months after the sexual assault by L.C.'s counselor that Mr. Lee had been reported "a long time ago."  [R. 1 at 11.]  However, as discussed *supra*, this general statement made months after the assaults fails to demonstrate that the BOP knew or should have known about Mr. Lee's conduct.

The BOP's claim that "FMC Lexington officials were unaware of sexual misconduct by [Mr. Lee]," or any pattern of misconduct until his actions were reported by another inmate is supported by L.C.'s statements detailing how Mr. Lee went to great lengths to conceal his conduct.  [*See* R. 28-1; R. 28-2 at 8.]  L.C. stated that only one other individual, another inmate, may have witnessed Mr. Lee's misconduct with her.  [R. 28-1 at 23.]  Furthermore, once the BOP became aware of the situation, it acted quickly to remove Mr. Lee from his position, and

---

[5] L.C.'s Complaint relies on matters discussed in her SF-95 form that she filed about the incident, which is a public record that can be considered when ruling on a motion to dismiss.  *Porter v. Lear*, 2021 WL 6754524, at *2 (E.D. Wash. Sept. 24, 2021); *Marie v. United States*, 2021 WL 308884, at *3 (N.D. Ill. Jan. 29, 2021).  The Plaintiff also refers to the BOP's investigation in her complaint.  [*See, e.g.*, R. 1 at 10.]  Because records contained in the BOP's investigation are central to her claim, those records can be considered as part of the pleadings.  *See Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings.")

Mr. Lee was criminally charged for his conduct.  Accordingly, the evidence fails to demonstrate that the BOP breached its duty of care to L.C.

III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The United States' Motion to Dismiss the assault and battery claims and the negligent confinement claim **[R. 26]** is **GRANTED**;

2. The United States' Motion for Leave to Seal a Document **[R. 27]** is **GRANTED**; and

3. L.C.'s Motion to Stay **[R. 31]** is **DENIED AS MOOT**.

This the 19th day of April, 2022.

Gregory F. Van Tatenhove
United States District Judge